# UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

FILED

2003 OCT 31  A 9: 38

US DISTRICT COURT
BRIDGEPORT CT

COMPLAINT (Second Amendment)

Christopher L. Bakowski

   Plaintiff,

vs.                                                      Case No.  3:02CV-739 (SRU)

Edward E. Hunt, Lieutenant Colonel, USAF,
Joseph H. Rouse, Chief & Deputy Chief of Tort Claims, U.S. Army,
James P. Gerstenlauer, Colonel, U.S. Army,
Brett Coakley, Major, General Torts Branch, AFLSA/JACT,
Mike Deegan, Captain, Army Claims Service,
Mr. Mitchell, OGC, Defense Contract Audit Agency ("DCAA"),
McConnon, Major, Torts Branch, Department of Justice,
United States Department of Justice,
United States Air Force,
United States Defense Contract Audit Agency,
United States Army,
   Defendants.

1

## A. PARTIES

1. Christopher L. Bakowski is a citizen of Connecticut who resides at 335 Rocky Rapids Road.
2. Defendant Edward E. Hunt is believed to be a citizen of Virginia whose address is unknown at this time, and who is employed as Chief, Tort Claims & Litigation Division, Air Force Legal Services Agency, 1501 Wilson Boulevard, Room 835, Arlington, VA, 22209-2403.
    At the time the claim(s) alleged in this complaint arose, was the defendant acting under color of state law? _X_ Yes ___ No. If "Yes", explain: The defendant was a Lieutenant Colonel in the U.S. Air Force.
3. Defendant Joseph H. Rouse is believed to be a citizen of Maryland whose address is unknown at this time, and who is employed as Chief, Tort Claims Division, U.S. Army Claims Service, Fort Meade, Maryland, 20755.
    At the time the claim(s) alleged in this complaint arose, was the defendant acting under color of state law? _X_ Yes ___ No. If "Yes", Explain: The defendant was an employee of the U.S. government
4. James P. Gerstenlauer is believed to be a citizen of Maryland whose address is unknown at this time, and who is employed as Chief, Tort Claims Division, Office of the Judge Advocate General, U.S. Army, Fort Meade, Maryland, 20755.
    At the time the claim(s) alleged in this complaint arose, was the defendant acting under color of state law? _X_ Yes ___ No. If "Yes", explain: The defendant was a Colonel in the U.S. Army.
5. Brett Coakley is believed to be a citizen of Virginia whose address is unknown at this time, and who is a Major in the General Torts Branch, AFLSA/JACT, 1501 Wilson Boulevard, Suite 838, Arlington, VA, 22209-9147.
    At the time the claim(s) alleged in this complaint arose, was the defendant acting under color of state law? _X_ Yes ___ No. If "Yes", explain: The defendant was a Major in the U.S. Air Force.
6. Mike Deegan is believed to be a citizen of Maryland whose address is unknown at this time, and who is a Captain in the Army Claims Service, Building 4411, Llewellyn Avenue Fort Meade, Maryland, 20755.
    At the time the claim(s) alleged in this complaint arose, was the defendant acting under color of state law? _X_ Yes ___ No. If "Yes", explain: The defendant was a Captain in the U.S. Army.
7. Mr. Mitchell is believed to be a citizen of an unknown state whose address is unknown at this time, and who is in the Office of the General Counsel, DCAA, Fort Belvoir, VA, 22060-6219
    At the time the claim(s) alleged in this complaint arose, was the defendant acting under color of state law? _X_ Yes ___ No. If "Yes", explain: The defendant was an employee of the U.S. government.
8. Mr./Ms. McConnon is believed to be a citizen of an unknown state whose address is unknown at this time, and who was a Major in the Torts Branch, Department of Justice, Washington, DC.
    At the time the claim(s) alleged in this complaint arose, was the defendant acting under color of state law? _X_ Yes ___ No. If "Yes", explain: The defendant was an employee of the U.S. government.

## B. JURISIDICTION

1. Jurisdiction is asserted pursuant to (CHECK ONE)

   _____  42 U.S.C. 1983
   _____  Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics, 403 U.S. 388 (1971) and 28 U.S.C. 1331

2. Jurisdiction is invoked pursuant to 28 U.S.C. 1332. (If you wish to assert jurisdiction under different or additional statutes, you may list them below.)

   <u>This case is alleged to be a state tort of intentional and/or negligent infliction of emotional distress.</u>

## C. NATURE OF THE CASE

**BRIEFLY state the background of your case.**

1. On November 24, 1998, the plaintiff, Christopher Bakowski, filed a civil rights complaint in United States District Court, District of Connecticut, against fifteen current and former federal employees and three federal agencies: the Department of Justice ("DOJ"), the Department of the Air Force ("Air Force"), and the Defense Contract Audit Agency ("DCAA") (collectively, "the agency defendants"). That case is currently on appeal from the Honorable Dominic J. Squatrito, U.S. District Judge, case CIVIL No. 3:98cv2287 (DJS), ("2287").

2. The facts of the instant case date back to the spring of 1999. At that time, on April 26, 1999, the defendants in 2287 submitted a "Motion to Dismiss" and a "Memorandum in Support of Defendants' Motion to Dismiss," ("Dismiss"). The 2287 defendants submitted, as a government exhibit in Dismiss, a letter of denial as the final administrative action on the plaintiff's claim against the United States. The letter was from James P. Gerstenlauer, Colonel, U.S. Army, Chief, Tort Claims Division. The letter was signed and dated May 15, 1998. Since the plaintiff filed his claim on November 24, 1998, the 2287 defendants' argued that the six-month statute of limitations was exceeded by nine days - an open and shut case they claimed.

3

3. However, after review by the plaintiff of the documents received from the defendants in the 2287 case, it appeared that there was a discrepancy between what the 2287 defendants swore to be the truth and what actually was the truth. The plaintiff, in an opposition brief filed on June 8, 1999, produced a letter that the government had sent to him that was absolutely identical to the one submitted by the defendants in all respects, with the sole exception being the date that was stamped at the top of the page. The date on this original, un-doctored letter read May 27, 1998. Therefore, the plaintiff did not miss the statute of limitations by nine days, but instead had filed the case three days within the statutory period.

4. The Court, in 2287, quickly denied that part of Dismiss pertaining to the May 27 letter after the government acceded to the fact that the document that was originally submitted as an exhibit in Dismiss could not be explained. More than four years later, 2287 continues to progress through the legal system and the government has yet to identify those responsible for the document falsification and perjury.

5. The conduct of the defendants in this case, as described in the claims below, represents a level of malicious conduct that can only be described as extreme and outrageous. These individuals attempted to deprive the plaintiff of his due process right with the knowledge that such deprivation would cause severe emotional distress to the plaintiff.

6. The actions of the defendants, listed below and taken as fact, if recited to an "average member of the community would arouse his resentment against the actor, and lead him to exclaim, Outrageous!" Appleton, 254 Conn. at 210-211.

7. The plaintiff has suffered severe emotional distress due to the actions of the defendants. He suffers from sleep disorder, acute anxiety, disabling concentration difficulty and other severe distress. The plaintiff

4

does not enjoy the same quality of life as he did before the defendant's tortious acts.

8. The same conduct by the defendants supports the negligent infliction of emotional distress. The Connecticut Supreme Court stated that this tort should "be limited so as not to open up a wide vista of litigation in the field of bad manners, where relatively minor annoyances had better be dealt with by instruments of social control other than law." Montinieri v. S. New England Tel. Co., 175 Conn. 337, 345 (1978)(quotation omitted). The instant matter is anything but an instance of "bad manners." The actions of the defendants were not only civil violations, they were criminal, and should have been investigated and prosecuted as such. The submission of perjured documents to this Court by agents of the government corrupts the foundation of our judicial system.

### D. CAUSE OF ACTION

I allege the following:

**Claim 1 - Intentional Infliction of Emotional Distress:**

The defendants conspired to intentionally and/or negligently inflict emotional distress on the plaintiff by fabricating documents that were then submitted in a case pending versus the U.S. Government, see Bakowski v. Kurimai, et al, 398cv2287(DJS), ("2287") in an attempt to have that case dismissed.

**Supporting Facts:**

1. On or about November 24, 1998, the plaintiff filed a complaint against fifteen current or former federal employees and three federal agencies in a malicious prosecution suit pursuant to Bivens v. Six Unknown Agents of the Federal Bureau of Narcotics, 403 U.S. 388 (1971), and the Federal Tort Claims Act ("FTCA"), 28 U.S.C. 1346(b), 2401(b), and 2671 to 2680.

5

2.  On or about April 26, 1999, the 2287 defendants filed a Motion to Dismiss, and Memorandum in Support of Defendants' Motion to Dismiss ("Dismiss").

3.  On or about April 20, 1999, the defendant, Joseph H. Rouse, provided an affidavit to the U.S. Attorney's Office, District of Connecticut, stating that a denial letter was mailed to the plaintiff on 15 May 1998 ("May 15 letter"). This affidavit was submitted by defendant Rouse as a declaration under penalty of perjury that the May 15 letter was "true and correct."

4.  On or about April 20, 1999, Rouse also sent to the U.S. Attorney, District of Connecticut, a copy of the May 15 letter (**Attached hereto as Exhibit I**). The affidavit and May 15 letter were included as Exhibit 2 in Dismiss. This affidavit was submitted by defendant Rouse with a declaration under penalty of perjury that the May 15 letter was "true and correct."

5.  The 2287 defendants then used these documents to support their argument that the plaintiff had exceeded the statute of limitations deadline on the 2287 FTCA claim. See Dismiss at 10, "While the plaintiff _may_ have timely filed his FTCA claim with one appropriate agency within the two-year limit after his malicious prosecution claim had accrued, he clearly did not begin the instant action within six months after the date of mailing of the notice of final denial of the claim."

6.  On June 8, 1999, the plaintiff filed a motion to address the part of the 2287 defendants' Motion to Dismiss that related to the May 15 letter. See Plaintiff's Limited Rebuttal to Defendants' Motion to Dismiss (Doc. #14, dated 4/26/99) and Second Request for Extension of Time to Respond to Remaining Allegations. The plaintiff challenged the veracity of the May 15 letter and produced an identical letter bearing the date May 27, which the government had sent him.

6

7. On or about August 20, 1999, the 2287 defendants submitted a "Reply Memorandum in Support of Defendants' Motion to Dismiss." ("Reply")

8. In that Reply, the 2287 defendants included another declaration by defendant Rouse, this time an admission of ignorance by Rouse, under penalty of perjury, acknowledging the existence of a "27 May 1998 denial letter" ("May 27 letter").

9. In Reply, Rouse also provided a redacted copy of the "US Army Claims Service's certified mail log." Defendants, in this instant action, as an attempt to conceal the May 15/27 fraud also fabricated this document to include the recording of two letters being sent via certified mail to the plaintiff.

10. In Reply, the 2287 defendants responded to the plaintiff's allegations of fraud and deceit by stating in a footnote, "Because the government presently has no explanation for what may have happened to the May 15th letter, or why a second letter was sent, the defendants withdraw their argument at this time concerning the six-month limitation period of the FTCA." See Reply at 5, footnote 3 continued to Reply at 6.

11. Since August 20, 1999, no one has ever put forth <u>any</u> explanation whatsoever for this mysterious May 15 letter. The reason that no one has come forth is clear. There can only be one explanation; to wit, the May 15 letter was fabricated by the defendants in this instant matter to deny the plaintiff his rights under the U.S. Constitution and inflict emotional distress.

12. The May 15 letter is a denial of claim letter with respect to the plaintiff's 10/31/97 Request for Administrative Relief (**attached hereto as Exhibit II**) for actions taken by certain individuals and government agencies.

13. The Request for Administrative Relief states, in part, "[t]he trauma, humiliation, defamation, and pain that my family and I suffered during the period identified above have caused permanent, substantial,

7

and irreparable harm to me. Some, but not all, examples of events, which caused this suffering, were as follows. My friends, family, acquaintances, and co-workers viewed the public notice of my indictment in all the local papers with major headlines. There was additional pain and suffering associated with two additional superseding indictments. My family and I were subjected to two separate attempts at jury selection. I was placed on leave from my company and was not allowed to work. The USAF debarred me. My family and I were subjected to the nightmare of a trial."

14. The body of the Request for Administrative Relief identifies actions - intentional, malicious, negligent, etc. - to which the criminal case defendants were accused.

15. The defendants in the instant matter had copies of the Request for Administrative Relief or were knowledgeable of its contents.

16. The May 15 letter, in it's opening paragraph, acknowledges the plaintiff's request for $120,000,000 "for defamation and **pain and suffering**" from the malicious prosecution in 1995 (emphasis added). This is evidence that the defendants knew the pain and suffering that the plaintiff suffered and that the plaintiff was in a fragile mental state.

17. The May 15 letter also includes an explanation that the denial of claim is due to "failing to satisfy the statute of limitations." This is proof that the defendants knew statute of limitation law.

18. The final paragraph of the May 15 letter warns the plaintiff to file suit in District Court "no later than six months from the date of mailing this letter, or your remedy will be forever barred." Clearly, the defendants knew the statute of limitations law.

19. Defendents Deegan, Mitchell, Coakley, McConnon, Gerstenlauer, Hunt, those at JALS-LT, and others not presently known by the plaintiff destroyed documents in an attempt to conceal the fabrication of the May 15 letter.

20. There were at least five copies of the May 15/27 letter created and mailed/filed within the U.S. government. Specifically, in Reply as part of Exhibit A, the second page of the May 15 letter shows that copies were furnished to JALS-LT, OGC DCAA (ATTN: Mr. Mitchell), AFLSA/JACT (MAJ Coakley), and DOJ Torts Branch (MAJ MCCONNON).

21. All copies of the May 15/27 letter have been destroyed by the defendants. In Reply, the 2287 defendants state in footnote 3, (see Dismiss at 6), that "In fact, agency counsel in this matter have been unable to locate a copy of the May 27th letter in any government file." They do admit, however, that the copies did exist at some point. "However, the defendants in this litigation do not contest that a certified letter (which is assumed to be the one produced by the plaintiff) was sent to the plaintiff on May 27, 1998." Id.

22. All defendants are attorneys, former attorneys, legal advisors, or are well-versed in administrative, civil, and/or criminal law.

23. The defendants' actions, as identified in the foregoing, clearly indicate that the defendants intended to inflict emotional distress.

24. The defendants' intentional conflict did cause emotional distress to the plaintiff.

**Claim 2 - Negligent Infliction of Emotional Distress:**

1. The plaintiff incorporates paragraphs 1 through 22 of the first claim as paragraphs 1-22 of this second claim.

23. The defendants knew or should have known that their conduct, outlined above, would cause the plaintiff emotional distress.

24. The defendant's conduct, outlined above, did cause the plaintiff emotional distress.

9

### E. PREVIOUS LAWSUITS AND ADMINISTRATIVE RELIEF

1. Have you begun other lawsuits in state or federal court dealing with the same facts involved in this action?  ___ YES  _X_ NO.
2. I previously sought informal or formal relief from the appropriate administrative officials regarding the acts complained of in Part D.  _X_ Yes  ___ No.

The plaintiff sent a letter dated March 15, 2002, to the relevant government agencies and officials requesting relief.

### F. PREVIOUS DISMISSED ACTIONS OR APPEALS

Not Applicable

### G. REQUEST FOR RELIEF

I request the following relief:

The trauma, humiliation, defamation, and pain that my family and I suffered during the period identified above have caused permanent, substantial, and irreparable harm to me. Because of these and other factors, I am demanding compensatory damages of $3,000,000, which includes adverse impact on earnings potential, and pain and suffering. I also seek $9,000,000 in punitive damages so that those responsible for these repugnant acts and the agencies that countenanced them will see that, in this country, with power comes responsibility and accountability. The sum certain that I seek is $12,000,000.

I also seek a written apology from the U.S. Army, the U.S. Attorney's office, the USAF, the AFLSA, the DOJ, the JALS-LT, and the OGC, DCAA.

### H. JURY DEMAND

Do you wish to have a jury trial?  Yes _X_  No ___

DECLARATION UNDER PENALTY OF PERJURY

The undersigned declares under penalty of perjury that he is the plaintiff in the above action, that he has read the above complaint and that the information contained in the complaint is true and correct.

Executed at Stamford, CT on October 14, 2003.

    (location)        (date)

                          Plaintiff's Original Signature



**DEPARTMENT OF THE ARMY**
U.S. ARMY CLAIMS SERVICE
OFFICE OF THE JUDGE ADVOCATE GENERAL
FORT GEORGE G. MEADE, MARYLAND 20755-5360

REPLY TO
ATTENTION OF:

MAY 15 1998

<u>CERTIFIED MAIL - RETURN RECEIPT REQUESTED</u>

Eastern U.S. Torts Branch
98-C01-T014

Mr. Christopher L. Bakowski
335 Rocky Rapids Road
Stamford, Connecticut 06903-3126

Dear Mr. Bakowski:

    This notice constitutes final administrative action on your claim against the United States in the amount of $120,000,000 for defamation and pain and suffering as an alleged result of the malicious prosecution by the Department of Justice in Connecticut in 1995.

    Your claim is denied. The Federal Tort Claims Act (FTCA) constitutes a limited waiver by the United States of its sovereign immunity from liability in tort for the acts of its officers and employees. Title 28, United States Code, Sections 1346(b), 2671-2680. Claims arising out of malicious prosecution and misrepresentation are exempted from the FTCA's limited waiver of sovereign immunity. Title 28, United States Code, Section 2680(h). In addition, the decision whether or not to prosecute a given individual is a discretionary function for which the United States is immune from liability. Title 28, United States Code, Section 2680(h); <u>General Dynamics Corp. v. United States</u>, 1998 WL 136209 (9th Cir. March 27, 1998).

    In addition, your claim is denied for failing to satisfy the statute of limitations. The FTCA provides that a claim against the United States is barred unless the claimant presents it in writing to the appropriate federal agency within two years of accrual. 28 U.S.C. § 2401(b). Your claim accrued when you were indicted on July 28, 1994. You did not file your claim with the Defense Contract Audit Agency until October 31, 1997, over a year after the statute of limitations expired. <u>Id</u>. at 9.

PLAINTIFF
EXHIBIT
1

-2-

    I am required by regulation to inform you that if you are dissatisfied with the action taken on your claim, you may file suit in an appropriate United States District Court no later than six months from the date of mailing of this letter, or your remedy will be forever barred. This is not intended to imply that any such suit, if filed, would be successful.

                                    Sincerely,

                                    James P. Gerstenlauer
                                    Colonel, U.S. Army
                                    Chief, Tort Claims Division

Copies Furnished:

JALS-LT
OGC, DCAA (ATTN: Mr. Mitchell)
AFLSA/JACT (MAJ Coakley)
DOJ, Torts Branch (MAJ MCCONNON)

## E. Previous Lawsuits and Administrative Relief

PLAINTIFF
EXHIBIT
11

October 31, 1997

Christopher L. Bakowski
335 Rocky Rapids Road
Stamford, CT 06903-3126

Department of the Air Force
1740 Air Force Pentagon
Washington, D.C. 20330
Sheila Cheston

---

I, Christopher L. Bakowski, am hereby presenting claims under the Federal Tort Claims Act (the "Act") against the individuals and/or agencies identified herein. I am not an attorney, but I am bringing this action in good faith that it is correct under the rules and procedures of the Act. The persons identified herein acted individually and/or conspired with others to violate my rights under the Constitution, Common Law, and/or Statutes.

On July 28, 1994 a Grand Jury indicted me on one count of conspiracy to defraud the U.S. Air Force ("USAF") and two counts of false statements. The case went to trial more than one year later on October 16, 1995. The trial concluded on October 31, 1995, after only a few minutes of deliberations, with a verdict of not guilty.

The facts of the case date back to the fall of 1989. At that time I had just started my new job as Marketing Manager for Propellants at Olin Corporation. The government's case against me related to the circumstances surrounding the procurement by the USAF of a certain type of rocket fuel from Olin.

During the trial, one count was withdrawn by the prosecutor (probably out of fear of being caught suborning perjury), another count was thrown out by the Judge after the government's case-in-chief, and the jury acquitted me on the final count after very brief deliberations. Some, but not all, of the claims made in this letter were raised at and before trial and are more fully detailed in the court file.

In summary, the individuals and agencies described in this letter knew that there was an insufficient basis for the charges against me, yet they continued to pursue the charges by making false statements themselves, creating false reports, violating the

rules of criminal procedure, and by presenting false testimony to Grand Juries and the trial jury.

The violation of my rights and the harm to me included the use of false testimony before the Grand Jury by Mr. Vail, Mr. Kurimai, Mr. Guerra and/or Ms. Thompson which eventually resulted in an indictment by the second of two Grand Juries after more than two years of Grand Jury presentations. These illegal acts violated my rights as stated in the opening paragraphs.

The intentional, malicious, negligent, and/or wrongful acts, and /or omissions by Mr. Silverman, Mr. Silva, Mr. Cox, Mr. Soares, Ms. Spiegel, and/or Mr. Adams of the Defense Contract Audit Agency ("DCAA") acting individually and/or in a conspiracy with others caused the routine audit of the aforementioned fuels contract to escalate to baseless allegations of criminal acts. False statements and/or testimony before government investigators, the Court and/or the trial jury is also alleged to have been committed by one or more of the aforementioned. These illegal acts on the part of employees of the DCAA violated my rights as stated in the opening paragraphs.

The intentional, malicious, negligent, and/or wrongful acts, and /or omissions by Mr. Guerra, Mr. Gohn, and/or Ms. Thompson of the Department of the Air Force ("AF") acting individually and/or in a conspiracy include, but are not limited to, false statements to federal investigative agents, grand juries, and/or the trial jury. These illegal acts on the part of employees of the AF violated my rights as stated in the opening paragraphs.

The intentional, malicious, negligent, and/or wrongful acts, and /or omissions by Mr. Plant and/or Mr. Bradley of the Defense Criminal Investigative Service ("DCIS") acting individually and/or in a conspiracy with others caused or allowed to be caused the use of false testimony before Grand Juries, the Court, the trial jury, and/or federal investigative agents. These illegal acts on the part of employees of the DCIS violated my rights as stated in the opening paragraphs.

The intentional, malicious, negligent, and/or wrongful acts, and /or omissions by Ms. Cook and/or Mr. Cohen of the Department of the Air Force acting individually and/or in a conspiracy with others caused or allowed to be caused the use of false testimony before the Grand Jury, the Court, the trial jury, and/or federal investigative agents. Ms. Cook, Mr. Cohen, and/or others acting individually and/or in a conspiracy intimidated, harassed, and/or humiliated me and others in an attempt to extort, illegally influence, and/or secure punishment on me and/or others with

respect to the case at hand. These illegal acts on the part of employees of the AF violated my rights as stated in the opening paragraphs.

Mr. Kurimai and/or Mr. Solloway did engage in illegal acts, which violated my rights, as stated in the opening paragraphs of this letter. The acts include, but are not limited to, malicious prosecution, prosecutorial misconduct before Grand Juries, negligence, false statements to a Grand Jury, and/or conspiracy to commit the aforementioned act(s).

The trauma, humiliation, defamation, and pain that my family and I suffered during the period identified above have caused permanent, substantial, and irreparable harm to me. Some, but not all, examples of events, which caused this suffering, were as follows. My friends, family, acquaintances, and co-workers viewed the public notice of my indictment in all the local papers with major headlines. There was additional pain and suffering associated with two additional superseding indictments. My family and I were subjected to two separate attempts at jury selection. I was placed on leave from my company and was not allowed to work. The USAF debarred me. My family and I were subjected to the nightmare of a trial.

Because of these and other factors, I am demanding compensatory damages of $30,000,000, which includes legal fees and related expenses, lost wages/income, adverse impact on earnings potential, and, pain and suffering. I also seek $90,000,000 in punitive damages so that those responsible for these repugnant acts and the agencies that countenanced them will see that, in this country, with power comes responsibility and accountability. The sum certain that I seek is $120,000,000. Please make out a cashiers check payable to Christopher L. Bakowski and mail it to the address on the first page.

Finally, I demand an apology from the U.S. Attorney's office, the USAF, the AFOSI, the DCIS, and the DCAA.

I would be happy to discuss this matter with you further and provide any other details that you deem necessary.


Christopher L. Bakowski

**Distribution**

Defense Contract Audit Agency ("DCAA")
Boston Region
Bridgeport Branch Office
555 Lordship Boulevard
Stratford, CT 06497-7124

Mr. Lawrence Silverman
Mr. James Silva
Mr. Robert D. Cox
Mr. Richard Soares
Mr. Robert Adams

Department of the Air Force
San Antonio Air Logistics Center
Kelly Air Force Base
Kelly Air Force Base, TX 78241-5000

Ms. Verna Thompson
Mr. Raul Guerra
Mr. Richard Gohn

Defense Criminal Investigative Service ("DCIS")
525 Brook Street
Rocky Hill, CT 06067-0167

Mr. E. Bradley
Mr. Alan Plant

Department of the Air Force
Office of Special Investigations
Detachment 109B
P.O. Box 380398
East Hartford, CT 06138-0398

Mr. Jeffrey Paul Vail

Department of the Air Force
Office of Special Investigations
Detachment 1016
Kelly AFB, TX 78241

Robert F. Mead

Department of the Air Force
1740 Air Force Pentagon
Office of the General Counsel, Sheila Cheston
Washington, D.C.   20330-1740

Mr. James S. Cohen
Ms. Janet C. Cook
Deputy General Counsel for Contractor Responsibility

The Inspector General
1140 Air Force Pentagon
Washington, D.C.   20330-1140

Air Force Office of Special Investigations
Mr. Jeffrey Paul Vail

Department of the Air Force
Headquarters San Antonio Logistics Center (AFMC)
204 Lombard Drive
Kelly Air Force Base, TX  78241-5609

Paul S. Davison

| |
|---|
| Defense Contract Audit Agency ("DCAA")
75 Bellevue Avenue
West Haven, CT

Ms. Susan Spiegel |

| |
|---|
| Defense Contract Audit Agency
8725 John J. Klugman Road
Suite 2135
Fort Belvoir, VA  22060-6219

Director, William H. Reed

General Counsel, Kirk B. Moberley Jr
Ms. Susan Spiegel |
| Department of Justice
Executive Office for United States Attorneys
Director, Carol D. Battiste
10th Street and Constitution Avenue, N.W.
Washington, D.C.  20530 |


Assistant United States Attorney
Calvin B. Kurimai
Alan Solloway