UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

FILED

2004 MAR 12  A 10: 48

U.S. DISTRICT COURT
BRIDGEPORT, CONN

Christopher Bakowski,

                Plaintiff,

v.                              CIVIL NO. 3:02CV739 (SRU)

Lt. Col. Edward E. Hunt, et al.,

                Defendants.

                              March 12, 2004

**MOTION FOR RECONSIDERATION
OF ORDER GRANTING
DEFENDANTS' MOTION TO DISMISS**

The plaintiff, Christopher Bakowski, who appears *pro se* in this matter, respectfully requests, pursuant to D.Conn.L.Civ.R. 7(c), that the court reconsider its Order of March 2, 2004, which granted the defendants' Motion to Dismiss. An unbroken string of U.S. Supreme Court cases unambiguously sides with the plaintiff in this matter. A very recent case, unpublished due to its recent vintage, decided by the Court of Appeals for the Second Circuit, clearly supports the plaintiff's position and refutes the defendants' statute of limitations argument upon which the court relied.

    I.      **Statute Of Limitations As Defined By The U.S. Supreme Court Regarding
           Federal Tort Claims Act ("FTCA") Cases Clearly Supports The Plaintiff In This
           Instant Matter.**

        A.        **Case History – Urie v. Thompson (1949)**

The Supreme Court began addressing the issue of the timeliness of claims filed against the United States in 1949 in its decision in Urie v. Thompson, 337 U.S. 163 (1949). *Urie*

declared that it was unreasonable to require that an injured party initiate a tort claim before the symptoms of the affliction had "yet [to] obtrude[] on his consciousness." *Id.* at 169. The defendants in this matter are violating one of the central findings of *Urie* by asserting that Mr. Bakowski was injured concurrently with the discovery of the forged documents. They are saying that, as a matter of law, the plaintiff's ailments accrued prior to March 20, 2000, even though there is no evidence to support such an assertion. The Supreme Court in *Urie* described this proposition as a "delusive remedy" because "[I]t would mean that at some past moment in time, unknown and inherently unknowable even in retrospect, [Bakowski] was charged with knowledge" of the deterioration of his emotional well-being and the subtle onset of the now pronounced physical symptoms. *Id.* at 169.

The Supreme Court, in *Urie*, also defined what it meant to be "injured" with regard to federal statute of limitations cases. " '[T]he afflicted [person] can be held to be injured only when the accumulated effects ... manifest themselves ...'. The quoted language, ..., seems to us applicable in every relevant particular to the construction of the federal statute of limitations with which we are here concerned." Urie at 170, quoting Associated Indemnity Corp. v. Industrial Accident Commission, 124 Cal.App. 378, 381, 12 P.2d 1075, 1076. Clearly, under *Urie*, the defendants' motion to dismiss in the instant matter must be denied.

B.  **Case History – United States v. Kubrick (1979)**

The *Urie* case was brought under the Federal Employers' Liability Act ("FELA"). The instant matter is brought under the Federal Tort Claims Act ("FTCA") and its relevant provision regarding the statute of limitations (28 U.S.C. 2401 (b)) bars any tort claim against the United States unless it is presented in writing to the appropriate federal agency "within two years after such claim accrues." (emphasis added). The United States Supreme Court decided such a case in

2

U.S. v. Kubrick, 444 U.S. 111 (1979). The issue for the Court in *Kubrick* was to decide when a claim "accrues" within the meaning of the FTCA. Kubrick at 113. They clearly stated that "[f]or statute of limitation purposes, a plaintiff's *ignorance of his legal rights* and his *ignorance of the fact of his injury* or its cause should not receive equal treatment." *Id.* at 112 (emphasis added). They, therefore, decided against Mr. Kubrick, but **not** because his case was barred by the statute of limitations due to his latent discovery of his injury and its cause; rather, he was barred because *his injury had manifested itself* and *its cause was known* yet he did not bring action until he knew of his legal right to sue. This is not the situation in the instant matter.

In *Kubrick*, the plaintiff was given an antibiotic in April 1968 (the "event") which, **months later**, manifested itself into a hearing condition and a loss of hearing (January 1969). *Id.* at 113-114. Mr. Kubrick discovered he had a right to sue in June 1971 and brought suit in August 1972. The Supreme Court ruled that Mr. Kubrick's case was ripe for accrual as of January 1969, when the plaintiff "was *aware* of his injury and its probable cause." *Id.* at 118 (emphasis added). It is crucial to note, however, that the Court did not consider the statute of limitations period to begin at the time of the "event," namely April 1968. This is an exact parallel to the instant matter where Mr. Bakowski's condition did not begin to manifest itself for months after the "event." The defendant's claim that the statute of limitations began to run once Mr. Bakowski discovered the forged documents. See Def. Memo. Supp. Dismiss at 5. Supreme Court precedent clearly states that Mr. Bakowski's claim accrued only when he knew both the probable cause (the forged letter conspiracy) and was aware that he was injured – that the injury had manifested itself. Since the evidence presented by Mr. Bakowski indicates that the symptoms of his injury were not apparent until some time in late 2000 or 2001 (at the earlilest), his filing of an administrative claim on March 15, 2002, was within the two-year statute of

limitations period. See Plain. Memo. Opp. Dismiss at 2-3. The defendants produced no evidence whatsoever to support a finding that Mr. Bakowski's condition had manifested itself at an earlier point.

### C.    Case History – Consolidated Rail Corporation v. Gottshall (1994)

In Consolidated Rail Corporation v. Gottshall, 512 U.S. 532 (1994), the Supreme Court expanded the definition of the term "injury" to include that of emotional distress. "The injury we deal with here is mental or emotional harm (such as fright or anxiety) that is caused by the negligence of another and that is not directly brought about by a physical injury, but that may manifest itself in physical symptoms." *Gottshall* at 544. "We see no reason why emotional injury should not be held to be encompassed within that term [injury], especially given that 'severe emotional injuries can be just as debilitating as physical injuries.' *Id.* at 550, quoting Gottshall v. Consolidated Rail Corp., 988 F.2d 355 (1993), at 361. The Court further defined emotional distress injuries by acknowledging the fact that these types of injuries are often separated in time from the event that caused them. "Emotional injuries may occur far removed in time and space from the negligent conduct that triggered them." *Gottshall* at 545.

### D.    Case History – Metro-North v. Buckley (1997)

In Metro-North Commuter Railroad Co. v. Buckley, 521 U.S. 424 (1997), the Supreme Court reiterated its position with regard to when a plaintiff may bring suit for injuries sustained by the actions of a defendant. Specifically, they addressed the issue of emotional distress damages and stated "[w]e conclude that the worker before us here cannot recover unless, and until, he manifests symptoms of a disease." *Buckley* at 427 (emphasis added). The Court went on to distinguish "meritorious" claims from "trivial" claims. *Id.* at 433. The issue in Buckley was "the existence and seriousness of Buckley's claimed emotional distress." *Id.* at 433-434.

The Court noted that Justice Ginsburg, in filing a separate opinion concurring in part and dissenting in part, illuminated the types of symptoms necessary to justify an emotional distress claim, which included anxiety and insomnia, among others. *Id.* at 445. There is no doubt that the symptoms suffered by Mr. Bakowski in the instant matter - including "trauma" and "humiliation," (Complaint at 9), "anxiety, inability to concentrate, sleeplessness, and an overwhelming distrust of any person not familiar to the plaintiff," (Plaint. Memo. Opp. Dismiss, doc #27, at 12), paranoia (Amended Complaint, doc #31, at 5), and a persistent eye tick/twitch (Motion Hearing, transcript of February 27, 2004) – rise to the level set by the United States Supreme Court.

E. **Case History – Rotella v. Wood (2000)**

In Rotella v. Wood et al., 528 U.S. 549 (2000), the Supreme Court clarified the concept of exactly when the statute of limitations period begins in a non-medical malpractice-type case. *Rotella* was a RICO case and the Supreme Court plainly stated, "discovery of the injury, not discovery of the other elements of a claim, is what starts the clock." *Id.* at 555. The Court applied the same logic that it used in medical malpractice cases such as United States v. Kubrick, 444 U.S. 111 (1979), to *Rotella* in that Mr. Rotella was deemed to have been injured in 1986 when he admits he knew of his injury even though the event which started the injury happened in February 1985. *Rotella* at 558-559.

II. **A Recently Decided Second Circuit Court Of Appeals Case Clearly Supports The Plaintiff In This Instant Matter.**

The case of Mix v. Delaware and Hudson Railway Company, Inc., __F.3d__ (No. 02-9200) (2nd Cir. Sept. 23, 2003), was argued before the United States Court of Appeals for the Second Circuit on June 23, 2003, and the Court published its decision on September 23, 2003.

5

Due to the proximity of the *Mix* decision to the instant matter, the plaintiff did not discover its existence until just before the motion hearing on February 27, 2004. Therefore, he was not able to properly brief the court on the relevance and precedence afforded by it to his case.

Mr. Mix sued Delaware and Hudson Railway over his hearing loss, which he allegedly suffered during the course of his 27-year employment with the railroad. The district court granted summary judgment to D & H Railway on statute of limitation grounds. The Second Circuit affirmed in part and vacated in part. In its decision, the Second Circuit enumerated several precedents that are relevant to the instant matter. Based upon these principles (identified below), it is clear that Mr. Bakowski's claim did not fall outside the applicable statute of limitations and the defendants' motion to dismiss should be denied.

The Second Circuit cited many of the Supreme Court cases, included previously herein, as its legal standard in addressing the statute of limitations issues in *Mix*. "With respect to 'gradual injuries' – those which occur gradually, over long periods of time [...] - the Supreme Court has adopted a 'discovery rule' and held that the FELA statute of limitations accrues when the injury 'manifest[s]' itself, taking into account whether the plaintiff 'should have known' of his injury. Urie v. Thompson, 337 U.S. 163, 170 (1949). The Court subsequently applied this discovery rule to claims under the Federal Tort Claims Act, 28 U.S.C. 2671-2680, holding that a tort claim does not accrue until the plaintiff discovers both his injury and its cause, but that accrual does not await awareness by the plaintiff that his injury was negligently inflicted. See United States v. Kubrick, 444 U.S. 111, 120-25 (1979)." *Mix* at 5.

In its decision, the Second Circuit embraced the principle of a discovery rule for gradual injuries. "Unlike traumatic injuries, the existence and causes of gradual injuries are often elusive. Whereas a longshoreman whose leg is crushed by a container shipment immediately

knows of both the existence and cause of his injury, a white-collar worker who feels slight, intermittent pain in her wrist may not know for many years that she has carpal tunnel syndrome as a result of her working conditions." *Mix* at 8. The court clearly saw the untenable and patently unfair position that a person - who suffers from an injury that takes time to manifest itself – would be in if he were required to somehow know that he is injured before he has any symptoms, or be barred as untimely if he waited until he actually developed the illness. *Ibid.*

The Second Circuit emphatically spelled out its position as to when the statute of limitations clock begins ticking in *Mix*. "[W]e rely upon the plain language of the discovery rule, which provides that the statute of limitations accrues upon the plaintiff's discovery of <u>both</u> his injury and its cause." *Id.* at 12, (<u>emphasis</u> <u>in</u> <u>original</u>).

Based upon the Second Circuit's acceptance of the discovery rule, a gradual injury manifestation, and the requirement that both an injury's cause and a display of symptoms are essential to accruing a cause of action, the district court should reconsider its decision and reverse, in the interest of justice and the fair application of the law.

### III.     The Actions Of The Defendants In This Matter Fulfill The Elements Of Negligent Or Intentional Infliction Of Emotional Distress.

The district court did not allow argument on the matter of whether the plaintiff failed to state a claim of intentional or negligent infliction of emotional distress, presumably because the court felt that the defendants failed to make a sufficient argument in their pleadings. However, in the interest of justice, and to complete the record regarding this issue, the plaintiff submits the following argument in support of his previously filed papers.

The facts and circumstances of this case - viewed in a light most favorable to the plaintiff - present a prima facie case of negligent or intentional infliction of emotional distress and can be

7

summarized as follows. One of the defendants in the instant matter (Bakowski v. Hunt et al.) was contacted by someone associated with the plaintiff's malicious prosecution case (Bakowski v. Kurimai et al.), either the AUSA or one of the *Kurimai* defendants, and was asked to supply a copy of the denial-of-claim letter that had been sent to Mr. Bakowski. The *Hunt* defendant retrieved the May 27, 1998, letter and compared the date to the November 24, 1998, filing date for the *Kurimai* complaint. This *Hunt* defendant then decided, either alone or in concert with other *Hunt* defendants, to change the date from May 27 to May 15. This forged date rendered the *Kurimai* case time-barred by the FTCA statute of limitations (six months from the receipt of denial-of-administrative-claim letter).

The May 27, 1998, letter was taken from the government file, the date was whited-out, and the letter was restamped with the date May 15, 1998. Defendant Rouse then submitted the forged letter along with his "unsworn statement" attesting to its veracity and that "[a] thorough search of all records and files" has been made (emphasis added). He also included a copy of the certified mail return receipt signed by Mr. Bakowski on June 2, 1998. The tracking number for this receipt was P 055 029 376 ("376"). The receipt was for the May 27, 1998, letter, a fact confirmed by the defendants themselves when they subsequently submitted a certified mail log with this receipt number and the May 27, 1998, mailing date (see below).

The *Kurimai* AUSA carefully crafted an argument that included the statement, "[t]he plaintiff appears to have signed for the notice of denial on June 2, 1998." (*Kurimai*, doc # 8 at 11). This was done to keep the two-year statute of limitations argument available - the FTCA has two limitation periods, one is six months from receipt of denial letter and the other is two years from claim accrual - in the unlikely event that the district court were to construe the date of receipt (June 2, 1998) as the operative date, rather than the (forged) date of mailing (May 15,

8

1998). However, the *Kurimai* AUSA apparently did not notice that the U.S. Postal Service took 18 days to get the letter to Mr. Bakowski.

On June 8, 1999, Mr. Bakowski submitted a copy of the actual May 27, 1998, denial letter to the *Kurimai* court. The *Kurimai* AUSA demanded a response from defendant Rouse, who submitted another "unsworn statement" on August 19, 1999. This affidavit denied that a May 27, 1998, letter exists anywhere in any government file and stated that yet another exhaustive review of all government files now indicates that after the May 15, 1998, letter (forged) was sent to Mr. Bakowski, inexplicably, nearly two weeks later, another letter was typed, signed, date stamped, mailed to the other defendants (although no copy of the May 27 letter has ever been produced), and also mailed on May 27, 1998, to Mr. Bakowski.

Additionally, defendant Rouse fabricated a certified mail log in order to cover up the fraudulent May 15, 1998, letter, and submitted it to the *Kurimai* court with his unsworn statement. This certified mail log, was completely redacted except for a column of return receipt tracking numbers and purported mailing dates and Mr. Bakowski's name. Defendant Rouse redacted and submitted the actual log with Mr. Bakowski's name, tracking number P055029376, and date 5/27/98, as well as a forged log which contains another tracking number (P055029367), the date 5/15/98, and Mr. Bakowski's name. This 5/15/98 entry is unmistakably the retyped name (BAKOWSKI, CHRISTOPHER) over an original, whited-out, unknown name.

Finally, Mr. Rouse contacted all defendants copied on the May 27, 1998, letter and asked them to either turn over their copies to him – whereby he would change the date stamp and return – or had them change the dates themselves. Either one of these scenarios is confirmed by the *Hunt* AUSA who mentioned to this court and the plaintiff during a scheduling conference that he

9

had in his possession (or has seen) multiple copies of the May 15, 1998, letter with date stamps "all over the place" (or words to that effect).

All of the aforementioned must be true, as a matter of law, because <u>there</u> <u>can</u> <u>be</u> <u>no</u> <u>other</u> <u>explanation</u> for the existence of two identical letters with different date stamps. If Mr. Bakowski has the original letter, dated May 27, 1998, in his possession, and the government cannot find a single copy of this version anywhere, and can only produce copies of letters that are <u>identical</u> <u>in</u> <u>every</u> <u>respect</u> except for the date stamp, then these <u>undisputable</u> <u>facts</u> would easily satisfy the plaintiff's burden at trial – as a matter of law – of proving negligent or intentional infliction of emotional distress. In the nearly five years since this fraud was perpetrated on the district court, no one in the government has offered any explanation of how the May 15 and May 27 letters came to co-exist. These defendants committed an outrageous crime against the plaintiff and must be held accountable for their actions.

## CONCLUSION

For the foregoing reasons and those set forth previously, this court should reconsider its decision and deny the defendants' Motion to Dismiss.

Respectfully submitted,

_____
Christopher Bakowski, *pro se*
335 Rocky Rapids Rd
Stamford, CT 06903
(203) 968-6398

## CERTIFICATION OF SERVICE

I hereby certify that a copy of the within and foregoing was mailed, postage prepaid, via first-class mail this 12th day of March, 2004 to:

William M. Brown, Jr.
Assistant United States Attorney
157 Church Street
New Haven, CT 06510

Christopher Bakowski